## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WILLIAM R. DAVIS, as executor of the estate of
James W. Davis, Sr., deceased,

        Plaintiff and Counterclaim Defendant,

  -against-

RAYMOND JAMES & ASSOCIATES, INC.,

        Defendant and Cross-claim Defendant,

and

CHRISTINE M. POFFENBARGER,

        Defendant, Counterclaim Plaintiff,
        Cross-claim Plaintiff and Third-Party
        Plaintiff,

  -against-

WILLIAM R. DAVIS, JAMES W. DAVIS, JR.,
LINDA M. TROUTT, and STAR ENTERPRISE,
INC.,

Third-Party Defendants.

Civil Action No. 05-288

## DECLARATION OF RHONDA ISELT

I, RHONDA ISELT, declare that:

1.      I make this Declaration in support of the motion of third-party defendant

Star Enterprise, Inc. to dismiss the third-party claim on the ground that the third-party

plaintiff Christine Poffenbarger has failed to exhaust her administrative remedies.

2.      I am one of three Administrators, Defined Benefit Plans, for Chevron

Corporation (formerly known as ChevronTexaco Corporation) and various of its

affiliates. My responsibilities in that capacity include administration of the Star Enterprise Retirement Plan (the "Star Plan"). A fair and accurate copy of the Star Plan, as it currently exists, is annexed hereto as Exhibit A.

3. James W. Davis, Sr. was a participant in the Star Enterprise Group Pension Plan. As of December 31, 2004, the Star Enterprise Group Pension Plan was merged into the Star Plan.

4. The Star Plan provides administrative remedies to participants and beneficiaries who do not receive a distribution from the Star Plan when due, or who do not agree with a matter pertaining to their benefits under the Star Plan. These administrative remedies are set forth in Article XIII ("Claim Procedures") on page 48 of Exhibit A.[1]

5. As part of the Summary Plan Description for the ChevronTexaco Retirement Plan, Chevron Corporation has issued simplified instructions for filing and appealing administrative claims for benefits. A fair and accurate copy of these instructions, entitled "How to File a Claim," is annexed hereto as Exhibit B. In connection with the Star Plan, the plan administrators will also accept submissions made according to the simplified instructions in Exhibit B. Adherence to the instructions in Exhibit B for filing and appealing benefits claims will be deemed to exhaust the administrative remedies in the Star Plan.

6. I understand that Christine Poffenbarger has sued Star Enterprise, Inc. because she claims that certain benefits under the Star Plan should be paid to her. Ms. Poffenbarger has not initiated the administrative procedures under the Star Plan (or the

---

[1] The address for plan communications reflected in Section 13.1 has changed. The new address is P.O. Box 6075, San Ramon, CA 94583-0775.

simplified procedures in Exhibit B) with respect to her claim.  Consequently, Ms. Poffenbarger has not exhausted her administrative remedies under the Star Plan.

       7.     The administrative review procedures in both Exhibit A and Exhibit B are open and available to Ms. Poffenbarger in the event that she decides, or is directed, to pursue her administrative remedies under the Star Plan.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 12, 2005.

Rhonda Iselt

# EXHIBIT A

**STAR ENTERPRISE
RETIREMENT PLAN**

Amended and Restated Effective January 1, 2002

# TABLE OF CONTENTS

**Page**

PREAMBLE        1

ARTICLE I.        DEFINITIONS ................................................................................. 3

    Section 1.1.        Actuarial Equivalent ................................................................. 3

    Section 1.2.        Affiliate ..................................................................................... 3

    Section 1.3.        Alliance Company .................................................................... 3

    Section 1.4.        Alternate Options ..................................................................... 3

    Section 1.5.        Annuity Reduction Amount ..................................................... 3

    Section 1.6.        Annuity Starting Date ............................................................... 3

    Section 1.7.        Appointment Agreement ........................................................... 3

    Section 1.8.        Approved Absence .................................................................... 3

    Section 1.9.        Average Monthly Pay ............................................................... 4

    Section 1.10.        Basic Retirement Benefit .......................................................... 4

    Section 1.11.        Beneficiary ............................................................................... 4

    Section 1.12.        Benefit Base Pay ...................................................................... 4

    Section 1.13.        Benefit Service ......................................................................... 5

    Section 1.14.        Break In Service ....................................................................... 5

    Section 1.15.        Cash Option .............................................................................. 5

    Section 1.16.        Code .......................................................................................... 5

    Section 1.17.        Commonly Controlled Group ................................................... 5

    Section 1.18.        Company ................................................................................... 5

    Section 1.19.        Compensation ........................................................................... 5

    Section 1.20.        Continuous Service ................................................................... 5

    Section 1.21.        Contract .................................................................................... 5

    Section 1.22.        Contribution Death Benefit ...................................................... 5

    Section 1.23.        Covered Employee .................................................................... 5

    Section 1.24.        Credited Service ....................................................................... 6

    Section 1.25.        Effective Date ........................................................................... 6

    Section 1.26.        Employee .................................................................................. 6

    Section 1.27.        Employer .................................................................................. 6

    Section 1.28.        ERISA ....................................................................................... 6

# TABLE OF CONTENTS
### (continued)

Page

Section 1.29.    50% Survivor Annuity ............................................................... 6

Section 1.30.    Financial Manager .................................................................... 6

Section 1.31.    Funding Agent .......................................................................... 6

Section 1.32.    Group Pension Plan .................................................................. 6

Section 1.33.    Initial Transferred Saudi Aramco Employee ............................ 6

Section 1.34.    Initial Transferred Texaco Employee ....................................... 6

Section 1.35.    Insurance Carrier ..................................................................... 6

Section 1.36.    Investment Manager ................................................................. 6

Section 1.37.    Joint and Survivor Annuity Option .......................................... 7

Section 1.38.    Leased Employee ..................................................................... 7

Section 1.39.    Life Income Option .................................................................. 7

Section 1.40.    Long Term Disability Plan ....................................................... 7

Section 1.41.    Management Committee ........................................................... 7

Section 1.42.    Member .................................................................................... 7

Section 1.43.    Military Leave of Absence ....................................................... 7

Section 1.44.    Minimum Retirement Benefit ................................................... 7

Section 1.45.    Normal Retirement Date .......................................................... 7

Section 1.46.    Normal Retirement Income ...................................................... 7

Section 1.47.    Optional Early Retirement Date ............................................... 7

Section 1.48.    Pension Contributions .............................................................. 7

Section 1.49.    Plan .......................................................................................... 7

Section 1.50.    Plan Administrator ................................................................... 8

Section 1.51.    Plan-to-Plan Transfer Option ................................................... 8

Section 1.52.    Plan Year ................................................................................. 8

Section 1.53.    Post-Termination 50% Survivor Annuity .................................. 8

Section 1.54.    Primary Insurance Amount ...................................................... 8

Section 1.55.    Qualified Domestic Relations Order ......................................... 8

Section 1.56.    Retired Member ....................................................................... 9

Section 1.57.    Retirement Date ....................................................................... 9

Section 1.58.    Retirement Income ................................................................... 9

# TABLE OF CONTENTS
(continued)

Page

Section 1.59.    Saudi Aramco ......................................................................... 9

Section 1.60.    Saudi Aramco Plan ................................................................ 9

Section 1.61.    Spousal Consent .................................................................... 9

Section 1.62.    Straight Life Annuity Option ............................................... 9

Section 1.63.    Subsidiary .............................................................................. 9

Section 1.64.    Survivor's Benefit ................................................................. 9

Section 1.65.    Termination Date ................................................................... 9

Section 1.66.    Texaco .................................................................................. 10

Section 1.67.    Texaco Plan ......................................................................... 10

Section 1.68.    Transferred Employee ......................................................... 10

Section 1.69.    Trust Agreement .................................................................. 10

Section 1.70.    Trustee ................................................................................. 10

Section 1.71.    Uniform Income Option ...................................................... 10

Section 1.72.    Vesting Service .................................................................... 10

ARTICLE II.    EMPLOYEE ELIGIBILITY ............................................................. 11

Section 2.1.    Eligible Employee ................................................................ 11

Section 2.2.    Member ................................................................................. 11

Section 2.3.    Service .................................................................................. 11

Section 2.4.    Break in Service ................................................................... 14

Section 2.5.    Special Rules for Qualified Military Service ...................... 15

ARTICLE III.    CONTRIBUTIONS .......................................................................... 16

Section 3.1.    Employer's Contributions .................................................... 16

Section 3.2.    Member's Pension Contributions ......................................... 16

Section 3.3.    Suspension and Discontinuance of Pension Contributions by a
Member ................................................................................. 16

Section 3.4.    Withdrawal of Pension Contributions .................................. 16

Section 3.5.    Rate of Interest .................................................................... 18

ARTICLE IV.    RETIREMENT DATE ...................................................................... 19

Section 4.1.    Normal Retirement Date ...................................................... 19

Section 4.2.    Optional Early Retirement Date ........................................... 19

## TABLE OF CONTENTS
### (continued)

Page

ARTICLE V.    RETIREMENT INCOME AT NORMAL RETIREMENT DATE ............... 20

Section 5.1.    Normal Retirement Income ................................................................. 20

Section 5.2.    Basic Retirement Benefit ................................................................... 20

Section 5.3.    Minimum Retirement Benefit ............................................................ 22

Section 5.4.    Former Employees of Getty Oil Company .......................................... 22

Section 5.5.    Minimum Benefit for Members Employed After Age 65 ................... 22

Section 5.6.    Calculation of Accrued Benefit of Section 401(a)(17) Employees ...... 23

ARTICLE VI.    RETIREMENT INCOME AT OPTIONAL EARLY RETIREMENT
DATE .................................................................................................... 24

Section 6.1.    Commencement of Benefits at Normal Retirement Date ..................... 24

Section 6.2.    Commencement of Benefits at Optional Early Retirement Date ......... 24

Section 6.3.    Code Section 417(e) Restrictions ...................................................... 25

ARTICLE VII.    FORMS OF RETIREMENT INCOME .......................................... 26

Section 7.1.    Normal Form of Retirement Income .................................................. 26

Section 7.2.    Optional Forms of Retirement Income ............................................... 27

Section 7.3.    Actuarial Factors ............................................................................. 28

Section 7.5.    Eligible Rollover Distributions ......................................................... 29

Section 7.6.    Definitions ....................................................................................... 30

ARTICLE VIII.    RULES AND REGULATIONS GOVERNING ALTERNATE
OPTIONS .............................................................................................. 31

Section 8.1.    Elections ........................................................................................... 31

Section 8.2.    Effect of Elections ........................................................................... 31

ARTICLE IX.    LIMITATION OF BENEFITS .......................................................... 32

Section 9.1.    Limitation on Benefits ...................................................................... 32

Section 9.2.    Top Heavy Provisions ...................................................................... 34

ARTICLE X.    DEATH, TERMINATION OF EMPLOYMENT AND CHANGE OF
STATUS ................................................................................................ 37

Section 10.1.    Beneficiary ..................................................................................... 37

Section 10.2.    Death Before Annuity Starting Date ............................................... 37

Section 10.3.    Death After Annuity Starting Date .................................................. 41

Section 10.4.    Termination of Employment ............................................................ 41

# TABLE OF CONTENTS
(continued)

Page

Section 10.5.    Change in Employment Classification ................................................. 43

ARTICLE XI.    EFFECT OF OTHER RETIREMENT PLANS OR LAW .......................... 45

Section 11.1.    Effect of Other Retirement Plans Where Benefits Are Provided in United States Dollars .......................................................................... 45

Section 11.2.    Effect of Other Retirement Plans Where Benefits Are Not Provided in United States Dollars .......................................................... 45

Section 11.3.    Purpose ......................................................................................... 45

ARTICLE XII.    FUNDING AGENTS ................................................................... 46

Section 12.1.    Contributions ................................................................................ 46

Section 12.2.    Investments .................................................................................. 46

Section 12.3.    Successor Funding Agents ............................................................. 46

ARTICLE XIII.    CLAIM PROCEDURES ............................................................... 47

Section 13.1.    Claim Procedures .......................................................................... 47

Section 13.2.    Appeals ........................................................................................ 47

Section 13.3.    Limitations on Filing Lawsuits ....................................................... 47

ARTICLE XIV.    AMENDMENT, MERGER OR TERMINATION OF PLAN .................... 48

Section 14.1.    Modification, Suspension, Amendment, Termination or Discontinuance of Plan or Contract ............................................................. 48

Section 14.2.    Top-25 Restriction ......................................................................... 49

Section 14.3.    Merger of Plans ............................................................................ 49

ARTICLE XV.    ADMINISTRATION, FIDUCIARIES AND ALLOCATION OF RESPONSIBILITIES ................................................................................... 50

Section 15.1.    Fiduciaries .................................................................................... 50

Section 15.2.    Allocation of Fiduciary Responsibilities ........................................... 50

Section 15.3.    No Joint Fiduciary Responsibilities .................................................. 53

ARTICLE XVI.    MISCELLANEOUS ..................................................................... 54

Section 16.1.    Headings ....................................................................................... 54

Section 16.2.    Construction .................................................................................. 54

Section 16.3.    Right of Employee Not Augmented by Plan ..................................... 54

Section 16.4.    Restrictions on Alienation and Assignment ..................................... 54

Section 16.5.    Notices to Be Filed with the Company ............................................ 54

**TABLE OF CONTENTS**
(continued)

Section 16.6.    Expenses ................................................................................. 54

Section 16.7.    Payment of Retirement Income ............................................... 54

Section 16.8.    Return of Contributions .......................................................... 55

Section 16.9.    Legal Effect ............................................................................. 55

Section 16.10.   Miscellaneous Provisions ........................................................ 56

ARTICLE XVII.   EMPLOYMENT BY ALLIANCE COMPANIES ....................................... 57

Section 17.1.    Eligibility ................................................................................. 57

Section 17.2.    Benefit Service ........................................................................ 57

Section 17.3.    Vesting Service ........................................................................ 57

Section 17.4.    Retirement Date ....................................................................... 57

Section 17.5.    Calculation of Alliance Employee's Retirement Benefit ....... 57

APPENDIX A.     PAY CLASSES ................................................................................. 1

Section A.1.     Pay Classes .............................................................................. 1

# STAR ENTERPRISE
# RETIREMENT PLAN

## INTRODUCTION{ TC \l "1"}

The Star Enterprise Retirement Plan became effective January 1, 1989.  On August 13, 1992, the Star Enterprise Management Committee approved an amended and restated version effective January 1, 1989.  On November 10, 1994, the Star Enterprise Management Committee approved an amended and restated version effective January 1, 1989.    The Star Enterprise Retirement Plan was last amended and restated as of December 31, 2001 to incorporate the provisions necessary to comply with the Small Business Job Protection Act of 1996, amendments to the Uniformed Services Employment and Reemployment Rights Act (USERRA), the Uruguay Round Agreements Act (GATT), the Taxpayer Relief Act of 1997, and to incorporate other amendments made by the Company since the prior restatement.

This amendment and restatement, generally effective January 1, 2002, includes certain amendments to the Plan in order for the Plan to continue to meet the requirements of Code sections 401(a) and 501(a), as amended by the Economic Growth and Tax Relief Reconciliation Act of 2001, and certain other amendments.  Unless specified otherwise in this document, the provisions of the Star Enterprise Retirement Plan in effect on a Member's Retirement Date or Termination Date, as applicable, will govern.

Plan Frozen as of July 1, 2002

Notwithstanding any provision of the Plan to the contrary, effective as of July 1, 2002 the Plan was amended to cease recognition of service and compensation for Members who are employed by an Alliance Company or parent or successor entity of an Alliance Company (the "Alliance Companies") after June 30, 2002.  Specifically, the following rules apply:

(1) Effective  July 1, 2002, "Average Monthly Pay" under the Plan no longer recognizes compensation, including incentive compensation plan awards, from the Alliance Companies to a Member, that otherwise would have been recognized in determining the Member's Accrued Benefit in the Plan after June 30, 2002, and also effective July 1, 2002 the Plan no longer recognizes a Member's future service with the Alliance Companies for any purpose under the Plan.  A Member's Accrued Benefit in the Plan will equal the Member's Accrued Benefit on June 30, 2002, and the Retirement Income payable under the Plan on any Optional Early Retirement Date will be determined with reference to the Member's total points (under Section 6.2 of the Plan) and Vesting Service on June 30, 2002.

(2) Each Member of the Plan who is an employee of the Alliance Companies on or after July 1, 2002, may elect any Annuity Starting Date on or after July 1, 2002, provided the Annuity Starting Date is no earlier than the month following the Member's attainment of age 50.

(3) Each Member of the Plan who is an employee of the Alliance Companies on June 30, 2002 and is not otherwise fully vested in his or her Accrued Benefit in the Plan, and each Member who terminated employment with the Alliance Companies between April 1, 1999 and July 1, 2002

before becoming fully vested in his or her Accrued Benefit in the Plan, will have a fully vested right to his or her Accrued Benefit in the Plan effective June 30, 2002.  The Members described in the preceding sentence shall be entitled to the benefits set forth in Subsections 10.4(b) and (c) of the Plan.

(4) In this regard, the Plan heretofore has treated any Member's transfer of employment to Saudi Refining Inc. as an end of continuous employment with the Company and with any Alliance Company.  Therefore, Saudi Refining Inc. is and has been excluded from the definition of an Alliance Company, and a Member who transferred employment to Saudi Refining Inc. is and was treated as no longer being employed by the Company or an Alliance Company.

# ARTICLE I.
## Definitions{ TC }

Unless otherwise required by the context, the following definitions will control:

**Section 1.1.** <u>Actuarial Equivalent</u>{ TC }. A benefit of equivalent value to that which it is being compared computed, where applicable, on the basis of the applicable actuarial tables and interest provided in Section 7.3.

**Section 1.2.** <u>Affiliate</u>{ TC }. An organization of which 50% or less (but more than 0) of the voting stock, capital interest or profits interest is owned or controlled by the Company.

**Section 1.3.** <u>Alliance Company</u>{ TC }. Alliance Company means Motiva Enterprises LLC, Equiva Services LLC, Equilon Enterprises LLC, Equiva Trading Company, Equilon Pipeline Company LLC or a subsidiary, affiliate or successor entity, provided the Member's service with the subsidiary, affiliate or successor is treated as continuous service by the Company.

**Section 1.4.** <u>Alternate Options</u>{ TC }. Any one of the six alternative forms of payment of Normal Retirement Income, as described in Section 7.2(c).

**Section 1.5.** <u>Annuity Reduction Amount</u>{ TC }. The amount of monthly Normal Retirement Income attributable to a Member's Pension Contributions that is forfeited by withdrawal of those Pension Contributions following the Member's completion of five years of Vesting Service, as described in Section 5.2(e).

**Section 1.6.** <u>Annuity Starting Date</u>{ TC }. The first day of any month on which an eligible Member or Beneficiary begins to receive payment of his or her Retirement Income under the Plan. A Member will be eligible to begin receiving his or her Retirement Income from the Plan on or after his or her earliest Annuity Starting Date, but not later than his or her latest Annuity Starting Date, as described below, provided he or she is entitled to Retirement Income under the Plan and is neither an Employee nor a Transferred Employee on his or her scheduled Annuity Starting Date:

    (a)    <u>Earliest Annuity Starting Date.</u> A Member may begin to receive his or her Retirement Income from the Plan no earlier than the first day of the month after his or her 50th birthday, or the later date he or she completes 5 years of Vesting Service (10 years of Vesting Service if the Member is not a Covered Employee).

    (b)    <u>Latest Annuity Starting Date.</u> A Member must begin to receive his or her Retirement Income no later than his or her Normal Retirement Date.

**Section 1.7.** <u>Appointment Agreement</u>{ TC }. Any agreement appointing an Investment Manager.

**Section 1.8.** <u>Approved Absence</u>{ TC }. Any leave of absence approved by the Employer, and any period of employment with any person, firm, business enterprise, or corporation to which a Member is transferred or loaned by an Employer.

Section 1.9.    Average Monthly Pay{ TC }.  The average of a Member's Benefit Base Pay for the 36 months (whether or not consecutive) during the Member's last 10 years of Credited Service for which Benefit Base Pay was the highest, including, in the case of an Initial Transferred Texaco Employee or an Initial Transferred Saudi Aramco Employee, base pay taken into account under the Texaco Plan or the Saudi Aramco Plan before January 1, 1989, or after that date, base pay of a Member while a Transferred Employee of Texaco or as provided in Article XVII.   Where a Member receives an award under the Alliance Incentive Compensation Plan, or its benefits-bearing equivalent ("ICP") for any Plan Year, beginning with the Plan Year ended December 31, 1998, the Member's ICP award, up to a maximum of 5% of the Member's Base Pay for the Plan Year to which the ICP relates (or for the lesser period of the Plan Year for which the Member was eligible under the ICP) will be divided by twelve or the lesser number of months during the year for which the Member was eligible under the qualifying ICP, and the result will be included prospectively in the Member's Average Monthly Pay for the same number of months, beginning with the month after the ICP award was made to the Member, provided that the ICP award will only be recognized for this purpose to the extent it was not recognized in determining benefits for the Member under the Star Enterprise Supplemental Pension Plan.

Section 1.10.  Basic Retirement Benefit{ TC }.  The amount of Normal Retirement Income to which a Member is entitled under Section 5.2, if greater than the Minimum Retirement Benefit.

Section 1.11.  Beneficiary{ TC }.  The person or persons designated pursuant to Section 10.1.

Section 1.12.  Benefit Base Pay{ TC }.  Regular monthly base wages or salary, excluding bonuses, overtime, and allowances, but determined before salary reduction under Code section 125, Code section 401(k), or Code Section 132(f)(4), all as determined by the Employer (or Texaco, where applicable).  The annual Benefit Base Pay of each Member taken into account under the Plan shall not exceed the 401(a)(17) Limitation.

The "401(a)(17) Limitation" means (1) for Plan Years beginning on or after January 1, 1989 and prior to January 1, 1994, $200,000, as adjusted by the Commissioner of the Internal Revenue Service for increases in the cost of living in accordance with Code section 401(a)(17)(B), (2) for Plan Years beginning on or after January 1, 1994 and prior to January 1, 2002, $150,000, as adjusted by the Commissioner of the Internal Revenue Service for increases in the cost of living in accordance with Code section 401(a)(17)(B), and (3) for Plan Years beginning on or after January 1, 2002, $200,000, as adjusted by the Commissioner of the Internal Revenue Service for increases in the cost of living in accordance with Code section 401(a)(17)(B).  Such $200,000 limit shall be applied retroactively with respect to the Benefit Base Pay paid in any Plan Year beginning prior to January 1, 2002, but only with respect to Members who complete at least one Hour of Service (as defined in Section 2.3) on or after January 1, 2002 and only with respect to benefits thereby accruing under the Plan on or after January 1, 2002.

The cost-of-living adjustment in effect for a calendar year applies to any period, not exceeding 12 months, over which Benefit Base Pay is determined (determination period) beginning in such calendar year.  If a determination period consists of fewer than 12 months, the limit will be multiplied by a fraction, the numerator of which is the number of months in the determination period, and the denominator of which is 12.

**Section 1.13.**  **Benefit Service{** TC **}.**  That service during which the Member earned retirement benefits under the Plan, as described in Section 2.3(c).

**Section 1.14.**  **Break In Service{** TC **}.**  A 12-month period ending on the Member's anniversary of employment in which he or she completes fewer than 501 Hours of Service.

**Section 1.15.**  **Cash Option{** TC **}.**  Payment of a Member's Normal Retirement Income in a lump sum payment, as described in Section 7.2(c)(4).

**Section 1.16.**  **Code{** TC **}.**  The Internal Revenue Code of 1986, as amended from time to time.

**Section 1.17.**  **Commonly Controlled Group{** TC **}.**  Any of the following:  (a) a controlled group of corporations (as defined in Code section 414(b)); (b) a group of two or more trades or businesses under common control (as defined in Code section 414(c)); (c) an affiliated service group (as defined in section 414(m)); or (d) any other organizations or arrangements required to be aggregated pursuant to regulations under Code section 414(o).

**Section 1.18.**  **Company{** TC **}.**  Star Enterprise or Star Enterprise 04011998, a general partnership organized under the laws of the state of New York.

**Section 1.19.**  **Compensation{** TC **}.**  A Member's wages, salaries and other amounts received for personal services actually rendered during a calendar year, including bonuses, commissions and overtime, but excluding deferred compensation, stock options and other distributions which receive special tax benefit.  The annual Compensation of each Member taken into account under the Plan shall not exceed the 401(a)(17) Limitation as set forth in section 1.12 of the Plan.  Compensation shall include any elective deferral (as defined in Section 402(g)(3) of the Code) and any amount which is contributed or deferred by the Employer at the election of the Employee and which is not includable in the gross income of the Employee by reason of section 125 or Section 132(f)(4) of the Code.

**Section 1.20.**  **Continuous Service{** TC **}.**  A Member's whole and fractional years of active and uninterrupted service as an Employee or Transferred Employee, after taking into account any approved bridges in service and including absences protected by leaves of absence approved by the Employer, measured from the Member's Employment Date to the earlier of the Member's termination date, by retirement or otherwise.

**Section 1.21.**  **Contract{** TC **}.**  A Group Annuity Contract issued by an Insurance Carrier to the Company.

**Section 1.22.**  **Contribution Death Benefit{** TC **}.**  The death benefit available to a Member who dies before his or her Annuity Starting Date, as described in Section 10.2(a).

**Section 1.23.**  **Covered Employee{** TC **}.**  A Member who transferred employment to an Alliance Company or Texaco from the Company and who terminates employment with an Alliance Company or Texaco, by retirement or otherwise, after April 30, 2001, with at least 5 years of Vesting Service.

Section 1.24.   Credited Service{ TC }.  Total service credited to the Employee for all completed months of continuous service with the Company, any Subsidiary or any Affiliate since the last date of employment, plus the total service before that date, whether continuous or not, credited to such Employee.  An Employee will be deemed to have been in service during an Approved Absence.

Section 1.25.   Effective Date{ TC }. January 1, 1989.

Section 1.26.   Employee{ TC }.  Any individual employed by an Employer; such term does not include a Leased Employee or any individual who is determined by the Employer to be an independent contractor.  The determination by the Employer that an individual is an independent contractor for purposes of entitlement to benefits under this Plan shall be final and binding, notwithstanding the fact that such individual may be classified or reclassified as a common law employee for employment tax or other purposes.

Section 1.27.   Employer{ TC }.  The Company or any Subsidiary or Affiliate which adopts the Plan with the consent of the Company.

Section 1.28.   ERISA{ TC }.   The Employee Retirement Income Security Act of 1974, as amended from time to time.

Section 1.29.   50% Survivor Annuity{ TC }.  The death benefit available to a Member who is still an Employee and dies before his or her Annuity Starting Date but after completing 5 years of Vesting Service or reaching age 55, as described in Section 10.2(b).

Section 1.30.   Financial Manager{ TC }.  The person or persons designated by the Management Committee of the Company to serve as the Financial Manager of the Plan.

Section 1.31.   Funding Agent{ TC }.  Any Trustee or Insurance Carrier.

Section 1.32.   Group Pension Plan{ TC }.  The Star Enterprise Group Pension Plan, as amended from time to time.

Section 1.33.   Initial Transferred Saudi Aramco Employee{ TC }.  Any Employee who was an employee of Saudi Aramco before the Effective Date and who was transferred to the Company on the Effective Date.

Section 1.34.   Initial Transferred Texaco Employee{ TC }.   Any Employee who was an employee of Texaco before the Effective Date and who was transferred to the Company on the Effective Date.

Section 1.35.   Insurance Carrier{ TC }.  Any insurance company appointed by the Financial Manager and designated as an Insurance Carrier under the Plan at any time.

Section 1.36.   Investment Manager{ TC }.  Any one or more persons or organizations appointed by the Financial Manager with authority and discretion to manage, acquire and dispose of the assets of the Plan subject to the provisions of the Appointment Agreement.

Section 1.37.   Joint and Survivor Annuity Option{ TC }.   Payment of a Member's Normal Retirement Income as an annuity payable in periodic installments to a Member for life and upon his or her death to his or her Beneficiary, as described in Section 7.2(c)(6).

Section 1.38.   Leased Employee{ TC }.   Any person (a) who performs services for the Company (other than an employee of the Company) pursuant to an agreement between the Company and any other person (the "leasing organization"), (b) who has performed such services on a substantially full-time basis for a period of at least one year, and (c) effective for Plan Years beginning after December 31, 1996, whose services are performed under primary direction or control by the Company.

Section 1.39.   Life Income Option{ TC }.   Payment of a Member's Normal Retirement Income in periodic installments, as described in Section 7.2(c)(1), (2) and (3).

Section 1.40.   Long Term Disability Plan{ TC }.   The Star Enterprise Long Term Disability Plan or, for a Member who transferred employment to an Alliance Company under Section XVI, the Alliance Long Term Disability Plan.

Section 1.41.   Management Committee{ TC }.   The Management Committee of the Company.

Section 1.42.   Member{ TC }.   An Employee who becomes a Member of the Plan, as provided in Article II, and who has not died or received all of the retirement income to which he or she is entitled under the Plan.

Section 1.43.   Military Leave of Absence{ TC }.   An Approved Absence of a Member under the Military Leave of Absence Policy of the Employer.

Section 1.44.   Minimum Retirement Benefit{ TC }.   The minimum amount of Normal Retirement Income to which a Member is entitled, as described in Section 5.3.

Section 1.45.   Normal Retirement Date{ TC }.   The first day of the first month following either (a) the Member's 65th birthday, or (b) any later retirement date selected by the Member in accordance with Section 4.1.

Section 1.46.   Normal Retirement Income{ TC }.   The benefit to which a Member is entitled on retirement, as described in Section 5.1.

Section 1.47.   Optional Early Retirement Date{ TC }.   The first day of the first month following receipt by the Employer of a Member's notice electing early retirement during the 15-year period preceding the Member's Normal Retirement Date, as described in Section 4.2 and by which date the Member has at least 10 years of Vesting Service (5 years of Vesting Service if the Member is a Covered Employee).

Section 1.48.   Pension Contributions{ TC }.   Contributions to the Plan made by Members in accordance with Section 3.2; such term will include pension contributions made to the Texaco Plan before the Effective Date by Initial Transferred Texaco Employees.

Section 1.49.   Plan{ TC }.   The Star Enterprise Retirement Plan, as amended from time to time.

**Section 1.50.  Plan Administrator**{ TC }.  The person or persons designated by the Management Committee of the Company to serve as the Plan Administrator of the Plan.

**Section 1.51.  Plan-to-Plan Transfer Option**{ TC }.  Payment of a Member's Normal Retirement Income by transferring such Normal Retirement Income (excluding the Member's Pension Contributions) to the Star Enterprise Thrift Plan, as described in Section 7.2(c)(5).

**Section 1.52.  Plan Year**{ TC }.  The 12-month period beginning on January 1 and ending the following December 31.

**Section 1.53.  Post-Termination 50% Survivor Annuity**{ TC }.  The death benefit available to a Vested Member who terminates employment on a Termination Date, and dies before his or her Annuity Starting Date, as described in Section 10.2(d).

**Section 1.54.  Primary Insurance Amount**{ TC }.  The full monthly old-age insurance benefit to which a Member would be entitled under the Social Security Act, in effect at the Member's Retirement Date or, if earlier, the date of his or her termination, if (a) he or she were fully insured and (b) if an Optional Early Retirement Date has been elected or with respect to termination before such date, he or she received no income after such Optional Early Retirement Date or termination date which would be treated as wages for purposes of the Social Security Act. In calculating such Primary Insurance Amount, the Member's salary history prior to employment with the Company may be estimated in accordance with procedures established pursuant to guidance issued by the Internal Revenue Service. The Member's actual past salary history for this period will be used if the Member so requests, and if he or she supplies documentation of that history no later than a reasonable period of time, as determined by the Plan Administrator, following the later of (i) the Member's retirement or termination and (ii) the time when he or she is notified of the benefit to which he or she is entitled. The Plan Administrator shall furnish each Member, both in the summary plan description and upon the Member's retirement or termination, notice of his or her right to supply actual salary history, the financial consequences of failing to do so, and the fact that actual salary history can be obtained from the Social Security Administration.

**Section 1.55.  Qualified Domestic Relations Order**{ TC }.  A judgment, decree or order pursuant to a state domestic relations or community property law which relates to the provision of child support or marital property rights, which creates or recognizes the existence of an alternate payee's right to (or assigns to an alternative payee the right to) receive all or part of a Member's Normal Retirement Income, and which meets the requirements of (a) and (b) below, as interpreted in accordance with Code section 414(p).

      (a)     Such order must specify:

            (1)     the name and last known mailing address of the Member and each alternate payee;

            (2)     the amount or the percentage of the Member's benefits to be paid to each alternate payee, or the manner in which such amount or percentage is to be determined;

(3)    the number of payments or period to which the order applies; and

(4)    each plan to which such order applies.

(b)    Such order must not require the Plan to:

(1)    provide any type or form of benefit or option not otherwise provided under the Plan;

(2)    provide increased benefits; or

(3)    pay to an alternate payee amounts required to be paid to another alternate payee under a prior Qualified Domestic Relations Order.

Section 1.56.   Retired Member{ TC }.  A Member who has reached his or her Retirement Date on or after the Effective Date.

Section 1.57.   Retirement Date{ TC }.  A Member's Normal Retirement Date, or, if an Optional Early Retirement Date has been elected, such Optional Early Retirement Date.

Section 1.58.   Retirement Income{ TC }.  Any benefit payable under this Plan to a Member pursuant to Section 5.

Section 1.59.   Saudi Aramco{ TC }.  Collectively, the Saudi Arabian Oil Company, the Arabian American Oil Company, a Delaware corporation, Aramco Services Corporation, a Delaware Corporation, and/or their subsidiaries or affiliates (as defined in Sections 1.2 and 1.58 respectively, but substituting Saudi Aramco for the Company, and excluding Texaco).

Section 1.60.   Saudi Aramco Plan{ TC }.  The Retirement Income Plan of Saudi Arabian Oil Company and the Retirement Income Plan of Arabian American Oil Company.

Section 1.61.   Spousal Consent{ TC }.  Written consent by the spouse of a legally married Member to a specified election or Beneficiary designation by the Member on a form provided by the Company and duly witnessed by a Plan representative or notary public.

Section 1.62.   Straight Life Annuity Option{ TC }.  Payment of Normal Retirement Income as an annuity payable in periodic installments to a Member for life and ending on the Member's death, as described in Section 7.2(a).

Section 1.63.   Subsidiary{ TC }.  An organization of which more than 50% of the voting stock, capital interest or profits interest is owned or controlled by the Company.

Section 1.64.   Survivor's Benefit{ TC }.  The death benefit available to a Member who dies before his Annuity Starting Date and is eligible for the 50% Survivor Annuity, as described in Section 10.2(c).

Section 1.65.   Termination Date{ TC }.  The date on which a Member is no longer an Employee or Transferred Employee and which occurs before his or her Optional Early Retirement Date.

Section 1.66.  Texaco{ TC }.  Texaco Inc., a Delaware corporation, and/or its affiliates or subsidiaries (as defined in Sections 1.2 and 1.63 respectively, but substituting Texaco Inc. for the Company, and excluding Saudi Aramco), and effective October 9, 2001, a subsidiary of ChevronTexaco Corporation.

Section 1.67.  Texaco Plan{ TC }.  The Retirement Plan of Texaco Inc., as amended from time to time.

Section 1.68.  Transferred Employee{ TC }.  Any Employee who was an employee of Texaco or Saudi Aramco immediately before his or her transfer to the Company, except for Initial Transferred Texaco Employees and Initial Transferred Saudi Aramco Employees or who transfers employment to an Alliance Company or Texaco.

Section 1.69.  Trust Agreement{ TC }.  Any Trust Agreement between any Trustee and the Company.

Section 1.70.  Trustee{ TC }.  Any bank or other institution appointed by the Company and designated as Trustee of the Plan at any time.

Section 1.71.  Uniform Income Option{ TC }Payment of Normal Retirement Income as an annuity payable in periodic installments to a Member for life and ending on the Member's death, with the amount of such installments adjusted when the Member becomes eligible to receive social security benefits, as described in Section 7.2(b).

Section 1.72.  Vesting Service{ TC }.  Service completed by the Member for entitlement to the retirement income provided by Employer contributions, as described in Section 2.3(b).

## ARTICLE II.
## Employee Eligibility{ TC }

Section 2.1.     Eligible Employee{ TC }.

(a)     Subject to the provisions of Article XVI, membership in this Plan is available to any Employee who meets the criteria of (b), (c) and (d) and is either:

    (1)     assigned to service in the United States and not represented by a labor organization, or

    (2)     assigned to service in the United States and represented by a labor organization which has bargained for and agreed to the provisions of this Plan, as it may be amended from time to time, in lieu of any other primary pension plan to which the Employer makes contributions, or

    (3)     carried on a United States payroll but assigned to regular service outside the United States, provided he or she would otherwise meet the requirements of (1) or (2) above.

(b)     Any Employee who meets the requirements of subsection (a) will be eligible to become a Member of this Plan on the first day of the first month following or coinciding with the 12-month period ending on his or her anniversary of employment in which he or she completes 1,000 or more Hours of Service provided he or she is actively at work.  If an Employee is not actively at work on that date, he or she will become a Member on the date he or she returns to work.

(c)     All Initial Transferred Texaco Employees who were participants in the Texaco Plan and all Initial Transferred Saudi Aramco Employees who were participants in the Saudi Aramco Plan will be eligible as of the Effective Date.  All other Initial Transferred Texaco Employees and Initial Transferred Saudi Aramco Employees, and all other Transferred Employees, will have their Hours of Service with Texaco or with Saudi Aramco, as applicable, counted for purposes of subsection (b).

(d)     Leased Employees and independent contractors are not eligible for Membership in this Plan.

Section 2.2.     Member{ TC }.  An Employee who becomes eligible after the Effective Date will become a Member on the first day of the month coinciding with or next following the date on which he or she becomes eligible.

Section 2.3.     Service{ TC }.

(a)     Hour of Service.  An Hour of Service is:

    (1)     Each hour for which an Employee is paid or entitled to payment for the performance of duties for the Employer, a Subsidiary or Affiliate, or any other organization in a Commonly Controlled Group which includes the Employer.

These hours will be credited to the Employee for each 12-month period ending on his or her anniversary of employment in which the duties are performed.

(2) Each hour for which an Employee is paid or entitled to payment by the Employer on account of a period of time during which no duties are performed, irrespective of whether the employment relationship has terminated, due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty, or leave of absence (following termination of the employment relationship, no more than 501 Hours of Service will be credited under this paragraph (2) for any single continuous period commencing with such termination, whether or not such period occurs in a 12-month period ending on the Employee's or Member's anniversary of employment).

(A) Hours under this Section 2.3(a) will be calculated and credited pursuant to Section 2530.200b-2 of the Department of Labor Regulations which are incorporated herein by this reference.

(B) The provisions of this Section 2.3(a) will apply to an Employee who is absent from work due to pregnancy, the birth of a child, the placement of a child in connection with the adoption of such child by the Employee, or the caring for the child during the period immediately following the birth or placement for adoption, except that such Hours of Service will be credited in the year in which such absence begins if the crediting of such Hours of Service is necessary to prevent a Break in Service in that year, and otherwise to the following year.

(3) Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer.

(A) The same Hours of Service will not be credited both under paragraph (1) or (2) above and under this paragraph (3).

(B) These Hours will be credited to the Employee for each 12-month period ending on his or her anniversary of employment to which the award, agreement or payment pertains rather than the period in which the award, agreement or payment is made.

(4) Hours of Service will include hours worked as a Leased Employee and hours worked in a non-Employee status which would have been hours as a Leased Employee but for the requirement that services have been performed on a substantially full-time basis for a period of at least one year.

(b) Vesting Service.

(1) All Initial Transferred Texaco Employees and all Initial Transferred Saudi Aramco Employees will be credited with Vesting Service accrued under the Texaco Plan or the Saudi Aramco Plan through December 31, 1988.

(2)    An individual will be credited with one year of Vesting Service for each 12-month period ending on his or her anniversary of employment in which he or she completes 1,000 or more Hours of Service. For Transferred Employees, Hours of Service with Texaco and/or Saudi Aramco will be counted for purposes of this subsection (2).

(3)    For purposes of determining Vesting Service, an individual will be credited with 10 Hours of Service with respect to each calendar day in which he or she is credited with one Hour of Service.

(4)    An individual's service with a Subsidiary, an Affiliate or with any organization in the Commonly Controlled Group that includes any Employer will be included as Vesting Service, subject to the rules of Section 2.4, provided that such individual is transferred within the group consisting of the Company, Subsidiary, Affiliate, or Commonly Controlled Group, and that such service is considered continuous and would have been credited as Vesting Service to an Employee of the Company.

(5)    In no circumstance will an Employee be credited with more than one year of Vesting Service for any 12-month period ending on his or her anniversary of employment.

(6)    A Member will be deemed to have completed five years of Vesting Service upon his or her Normal Retirement Date or upon the determination that he or she is disabled under the Long Term Disability Plan.

(c)    <u>Benefit Service</u>.

(1)    All Initial Transferred Texaco Employees will be credited with Benefit Service accrued under the Texaco Plan through December 31, 1988; except that a Member who terminates employment after May 1, 2001, and who completed his or her one year of Eligibility Service before July 1, 1976, under the Texaco Plan will also be credited with Benefit Service for those months during his or her 12-month period of Eligibility Service that Benefit Service is recognized under the Texaco Plan.

(2)    Any Employee who is a Member of the Plan and who completes 1,000 or more Hours of Service within any 12-month period ending on his or her anniversary of employment will be credited with one month of Benefit Service with respect to each calendar month in which such Employee completes an Hour of Service. Any Employee who completes less than 1,000 Hours of Service within any 12-month period ending on his or her anniversary of employment will be credited with one month of Benefit Service with respect to each calendar month in which (A) such Employee is a Member of the Plan, and (B) the aggregate number of days of absence from work with less than full pay totals less than 15.

(3)    If an Employee is required to complete 1,000 Hours of Service within an anniversary year of employment immediately before becoming a Member of the

Plan, each calendar month of that year in which the Employee completes an Hour of Service will be included as one month of Benefit Service. The percentage or percentages applicable to such periods of Benefit Service under Section 5.2(c) will be the same percentage or percentages applicable to the month of Benefit Service commencing on the date the Employee becomes a Member.

(4)     In no circumstance will an Employee be credited with more than one month of Benefit Service for any one calendar month.

(5)     For the purposes of calculating a Member's pension benefit under Section 5.2(c), the following periods of Benefit Service and pension benefits due in respect thereto will be disregarded:

    (A)     Service subsequent to employment by the Employer.

    (B)     Service preceding employment by the Employer during which the Member was covered by a pension plan containing a high final average pay formula and any service prior thereto, with the exception of service for Texaco by Initial Transferred Texaco Employees.

    (C)     Service preceding employment with the Employer during which the Member accumulated pension benefits in excess of the amounts which would have accrued under Section 5.2(c) had it been applied to such period of service.

Section 2.4.     Break in Service{ TC }.

(a)     An Employee who resumes employment with the Employer following a Break in Service will participate in the Plan immediately upon reemployment, provided such Employee is otherwise eligible under Section 2.1(a), but Vesting Service and Benefit Service credited to him or her before such Break in Service will not be restored until he or she has completed one year of Vesting Service following reemployment.

(b)     Notwithstanding subsection (a), an Employee who resumes employment with the Employer following five or more consecutive Breaks in Service will be subject to the following:

(1)     If the Employee has completed five years of Vesting Service and received a distribution pursuant to Section 10.4(b)(2) at the time he or she ceased to be an Employee, Benefit Service credited to him or her before the Break in Service will not be restored unless he or she repays the amount of such distribution with interest within the period specified in Section 3.4(d).

(2)     If the Employee has not completed five years of Vesting Service, and has no nonforfeitable right to a percentage of his Normal Retirement Income pursuant to section 9.2(f), he or she will be treated as a new Employee who must satisfy the provisions of Section 2.1 before becoming eligible to again become a Member of the Plan, and his or her service completed before the five consecutive Breaks in Service will not be taken into account for any purpose under this Plan.

Section 2.5.    Special Rules for Qualified Military Service{ TC }.    Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to "qualified military service" will be provided in accordance with Section 414(u) of the Code.

## ARTICLE III.
## Contributions{ TC }

Section 3.1.    Employer's Contributions{ TC }.  Subject to the provisions of Article XIV, each Employer will contribute and pay to the Funding Agent such amounts as the Financial Manager considers necessary, on the basis of actuarial calculations, to carry out the purposes of the Plan, and such contributions will be made at such times as the Financial Manager of the Plan will determine.  For purposes of this calculation, the combined funds under the Plan in the hands of the Funding Agent will be considered as one fund.

Section 3.2.    Member's Pension Contributions{ TC }.

(a)    Subject to Article XVII, each Member who has filed a signed form with the Employer may make a Pension Contribution equal to the sum of the following percentages of Benefit Base Pay, effective on the first day of each month following the later of the date he or she becomes a Member or the date on which he or she files the form:

   (1)    .655% of annual Benefit Base Pay not in excess of $7,800, plus

   (2)    1% of annual Benefit Base Pay in excess of $7,800.

(b)    Pension Contributions may be paid by the Member to the Employer or may be deducted by the Employer from the Member's pay, as determined by the Employer, and will from time to time be paid to the Funding Agent.

(c)    Changes in Pension Contributions as a result of a change in Benefit Base Pay will be effective on the first day of the month following or coinciding with the change in Benefit Base Pay.

Section 3.3.    Suspension and Discontinuance of Pension Contributions by a Member{ TC }.

(a)    A Member's Pension Contributions will be discontinued on the date the Member retires or terminates employment for any reason.

(b)    A Member's Pension Contributions will be suspended during any period of service during which he or she does not earn Benefit Service under Section 2.3(c).

(c)    Upon 30 days' written notice to the Employer a Member may, from time to time, suspend his or her Pension Contributions for a period of not fewer than 6 months during active employment, and may not resume making Pension Contributions to this Plan, to the Group Pension Plan or to any other similar plan of the Employer until after such 6 month period.

Section 3.4.    Withdrawal of Pension Contributions{ TC }.

(a)    Withdrawal Options.  A Member may elect to receive, before his or her Annuity Starting Date, a payment equal to (i) the value of his or her Pension Contributions, or (ii) the value of his or her Pension Contributions made after June 30, 1969, plus interest as set

forth under Section 3.5, computed from the January 1 following the Plan Year in which the Pension Contribution was made to the first day of the month of such withdrawal in the normal form of payment provided in Section 7.1, or, if the Member elects and with spousal consent, where applicable, in a cash payment; provided that interest applicable to Pension Contributions made before July 1, 1976 will be computed from the fourth July 1 following the Plan Year in which the Pension Contribution was made or from July 1, 1976, if earlier. A Member's election to make a withdrawal must be submitted to the Employer in writing and, if the Member is an Employee, such election may be submitted no earlier than 30 days before the effective date of the withdrawal. If the Member is legally married, the election must be accompanied by Spousal Consent.

(b) Effect of Pension Contribution Withdrawal After July 1, 1976.

    (1) A Member with 5 (or, before January 1, 1989, 10) or more years of Vesting Service who makes a withdrawal of Pension Contributions will have his or her pension benefit reduced as provided in Section 5.2(e).

    (2) A Member with fewer than 5 (or, before January 1, 1989, 10) years of Vesting Service who makes a withdrawal of Pension Contributions will have his or her pension benefit reduced as provided in Section 5.2(d)(5) and, if the withdrawal includes Pension Contributions made before July 1, 1969, will forfeit all benefit service accrued under the Texaco Plan before July 1, 1969, except for periods of credited service required as a condition of eligibility for Membership in the Texaco Plan before July 1, 1969.

    (3) Following a withdrawal of Pension Contributions by a Member who is an Employee, the Member may not make further Pension Contributions to this Plan, to the Group Pension Plan or to any other similar plan of any Employer for a period of 12 months from the effective date of such withdrawal.

(c) Effect of Pension Contribution Withdrawals Before July 1, 1976. Members who, regardless of Vesting Service, withdrew Pension Contributions from the Texaco Plan before July 1, 1976 are subject to the following rules:

    (i) If the withdrawal included any Pension Contributions made before July 1, 1969, the Member forfeited all benefit service accrued under the Texaco Plan before July 1, 1969, except for periods of credited service required as a condition of eligibility for Membership in the Texaco Plan before July 1, 1969.

    (ii) If the withdrawal included any Pension Contributions made after June 30, 1969, the Member will have his or her pension benefit reduced as provided in Section 5.2(d)(5).

(d) Repayment of Withdrawn Pension Contributions. A Member who has withdrawn his or her Pension Contributions under Section 3.4(a) or Section 10.4(a)(2) or (b)(2) may restore that portion of his or her pension benefit forfeited with respect to such withdrawal by repaying the amount so withdrawn with interest as set forth under Section 3.5, computed from the date of such withdrawal to the date of repayment. Such repayment

may be made at any time following such withdrawal and before his or her Retirement Date, except that  Members who have completed fewer than five years of Vesting Service at the date of such withdrawal must make repayment  within the following periods:

(1)     for a Member who continues in service, five years;

(2)     for a Member who has terminated employment, within the earlier of:

    (a)     five years after the first date on which the Member is reemployed, or

    (b)     the occurrence of five consecutive Breaks in Service commencing after the withdrawal.

<u>Section 3.5.</u>    <u>Rate of Interest</u>{ TC }.  The rate of interest applicable to Pension Contributions will be 5% or, for Members who both terminate employment and withdraw their Pension Contributions before completing five years of Vesting Service, 120% of the applicable Federal mid-term rate, compounded annually; provided that the interest rate applicable to Pension Contributions made (i) before 1989 and on or after July 1, 1976 will be 5%, compounded annually, (ii) before July 1, 1976 and on or after July 1, 1942, 2%, compounded annually; or (iii) before July 1, 1942, 3%, compounded annually.

**ARTICLE IV.**
**Retirement Date{ TC }**

Section 4.1.    Normal Retirement Date{ TC }.  A Member's Normal Retirement Date will be the first day of the first month following his or her 65th birthday unless he or she continues in active service, in which case his or her Normal Retirement Date will be the first day of any month which is subsequent to the date of receipt by the Employer of the Member's written notice.

Section 4.2.    Optional Early Retirement Date{ TC }.  Upon written notice by a Member who has completed at least 10 years of Vesting Service (5 years of Vesting Service if the Member is a Covered Employee), such Member's Retirement Date will be an Optional Early Retirement Date in lieu of his or her Normal Retirement Date.  The Optional Early Retirement Date may be the first day of any month during the 15-year period preceding the Member's Normal Retirement Date following the Employer's receipt of the Member's written notice.

## ARTICLE V.
## <u>Retirement Income at Normal Retirement Date{ TC }</u>

<u>Section 5.1.</u>    <u>Normal Retirement Income</u>{ TC }.  A Member whose retirement income has not commenced before his or her Normal Retirement Date will be entitled to receive his or her Normal Retirement Income on his or her Normal Retirement Date.

(a)    A Member's monthly Normal Retirement Income will be equal to the greater of the amounts determined under Section 5.2 (or 5.4, if applicable) or Section 5.3.

(b)    The Normal Retirement Income will commence on the first of the month coinciding with or next following the date of actual retirement of the Member, subject to Section 7.4.

<u>Section 5.2.</u>    <u>Basic Retirement Benefit</u>{ TC }.  A Member's Basic Retirement Benefit will be equal to the sum of the amounts determined in (a), (b) (c) and (d), less the amount, if any, determined in (e) and (f):

(a)    For Initial Transferred Texaco Employees credited with Benefit Service under the Texaco Plan before January 1, 1977, the benefits accrued by the Member under the Texaco Plan as of December 31, 1976.

(b)    For Initial Transferred Aramco Employees credited with accredited service under the Saudi Aramco Plan before January 1, 1989, a benefit calculated under the Saudi Aramco Plan for such period but using Average Monthly Pay as of Normal Retirement Date rather than "Average Earnings" under the Saudi Aramco Plan as of December 31, 1988.

(c)    A benefit equal to a one-sixth of the Member's Pension Contributions made after December 31, 1976 pursuant to Section 3.2.

(d)    A benefit equal to the excess, if any, of (A) over (B) where (A) equals the sum of (1), (2), (3) and (4) below minus (5) and (6) below and (B) equals the amount described in (7) below:

(1)    For Initial Transferred Texaco Employees, 1.6% of Average Monthly Pay multiplied by the number of years (or fractions of years based on completed months) of Benefit Service up to January 1, 1973;

(2)    For Initial Transferred Texaco Employees, 1.65% of Average Monthly Pay multiplied by the year (or fractions of a year based on completed months) of Benefit Service during 1973;

(3)    1.7% of Average Monthly Pay multiplied by the number of years (or fractions of years based on completed months) of Benefit Service after 1973;

(4)    3% with respect to Benefit Service for any period of regular service performed outside the United States and Canada after 1968 including a period of Military Leave of Absence if the .3% were applicable to the Member's service just before such Military Leave;

(5)     .2% of Average Monthly Pay multiplied by the number of years of Benefit Service after June 30, 1969 taken into account under (1), (2) and (3) above with respect to which the Member either (i) was eligible to make but made no Pension Contributions, or (ii) withdrew and did not repay Pension Contributions, if such withdrawal was made before July 1, 1976 or before completing 5 (or, before January 1, 1989, 10) years of Vesting Service;

(6)     A portion of the Member's Primary Insurance Amount, which will be equal to the lesser of:

     (a)     1.35% of the Member's monthly Primary Insurance Amount (without adjustment for commencement of social security benefits before age 65), multiplied by the Member's years of Benefit Service (including each completed month as one-twelfth of a year), up to a maximum of 33 1/3 years of Benefit Service, or

     (b)     1.35% of the Member's monthly Primary Insurance Amount (without adjustment for commencement of social security benefits before age 65) multiplied by the Member's years of potential Benefit Service up to a maximum of 33 1/3 (including each completed month as one-twelfth of a year) to the Member's Normal Retirement Date, multiplied by a fraction (which cannot exceed 1), equal to the Member's actual years of Benefit Service (including each completed month as one-twelfth of a year) over the Member's potential years of Benefit Service (including each completed month as one-twelfth of a year) to the Member's Normal Retirement Date;

(7)     the sum of (a) or (b) and (c) of this Section 5.2 and any other pension benefits due in respect to his or her Benefit Service.

(e)     The sum of any Annuity Reduction Amounts determined with respect to Member's withdrawal of any of his or her Pension Contributions after completing five years of Vesting Service. Such Annuity Reduction Amounts will be equal to one-twelfth of the withdrawn Pension Contributions that were not repaid, accumulated to the Member's Normal Retirement Date and expressed as an annual benefit in the form of a single life annuity (without ancillary benefits) commencing as of the Member's Normal Retirement Date calculated using the Applicable Interest Rate and mortality table as defined below. Member Contributions are accumulated to the Member's Normal Retirement Date by adding interest as set forth in Section 3.5 computed as to each such Pension Contribution from the end of the Plan Year in which it was made to the date of determination of the Annuity Reduction Amount, which shall be the Annuity Starting Date, and at the Applicable Interest Rate for the period beginning with the determination date and ending with the date upon which the Member would reach Normal Retirement Date. For purposes of this section, Applicable Interest Rate means the interest rate or rates that would be used by the Pension Benefit Guaranty Corporation for purposes of determining the value of a lump sum distribution of a Member's or Beneficiary's benefits under the Plan if the Plan had terminated on the first day of the Plan Year in which such distribution was made with insufficient assets to provide benefits guaranteed by the

Pension Benefit Guaranty Corporation.  The mortality table shall be the table specified in section 417(e)(3) of the Code, provided however that for Plan Years beginning after December 31, 1999, the 1994 Group Annuity Mortality Table with weighting of 50% males and 50% females, will be substituted and the Applicable Interest Rate will be the three-month rolling average of the annual interest rate on 30-year Treasury securities (as described in Code Section 417(e)(3)) for the third, fourth and fifth months preceding the month of the Member's Retirement Income Annuity Starting Date; and provided further that for determinations made on or after December 31, 2002, the mortality table shall be the mortality table described in Revenue Ruling 2001-62.

(f)     For Initial Transferred Aramco Employees, the monthly retirement benefit payable as a single life annuity under the Saudi Aramco Plan.

Section 5.3.     Minimum Retirement Benefit{ TC }.  A Member's Minimum Retirement Benefit will be equal to the sum of $12.00 for each year (including each completed month as one-twelfth of a year) of Benefit Service, less the sum of any Annuity Reduction Amounts calculated under Section 5.2(d).

Section 5.4.     Former Employees of Getty Oil Company{ TC }.

(a)     Notwithstanding the provisions of Section 5.2, the Basic Retirement Benefit for Members who were Members of the Pension Plan for Employees of Getty Oil Company and Certain Subsidiaries (the "Getty Plan") as of February 28, 1986, will be equal to the sum of (1) plus (2) minus the pension benefits under the Getty Plan as of December 31, 1984, that are calculated, governed, and paid by the annuity contract purchased on the Member's behalf from the Metropolitan Life Insurance Company.

(1)     the Basic Retirement Benefit determined under Section 5.2, less the pension benefit accrued under the Getty Pension Plan as of February 28, 1986 (which in no event will be less than 0).

(2)     the pension benefit accrued under the Getty Pension Plan as of February 28, 1986.

(b)     Pension benefits accrued under the Getty Plan will be calculated according to the terms of that plan, provided that 1) pension benefits under the Getty Plan as of December 31, 1984 will be calculated, governed, and paid by the annuity contract purchased on the Member's behalf from the Metropolitan Life Insurance Company; 2) in the event of death prior to retirement or other separation from service, such pension benefits shall be payable in accordance with the pre-retirement death benefits provisions of the Plan; and 3) where a Member's pension benefit in 5.4(a)(1) is greater than $0 and the Member retires under the terms of the Plan at age 55 or older, the Member will be permitted to elect to receive the pension benefit calculated pursuant to the provisions of the Plan over the Member's pension benefit under the Getty Plan as of December 31, 1984, in a single lump sum pursuant to Section 7.2(c)(4) or (5) of the Plan.

Section 5.5.     Minimum Benefit for Members Employed After Age 65{ TC }.  Notwithstanding any other provision of this Plan, the Normal Retirement Income of a Member employed after reaching age 65 will not be less than the following minimum amount: (i) as of the end of the Plan

Year in which he reaches age 65, the Normal Retirement Income at age 65 actuarially increased for delayed retirement; (ii) as of the end of the Plan Year in which he reaches age 66, the amount determined in (i) above, actuarially increased for delayed payment; (iii) as of the end of any subsequent Plan Year, the minimum amount as of the end of the prior Plan Year, actuarially increased for delayed payment.  For Members who remain employed after age 70 ½, the Member's benefit shall be actuarially adjusted for distributions required to be made pursuant to Section 7.4 of the Plan.

Section 5.6.    Calculation of Accrued Benefit of Section 401(a)(17) Employees{ TC }.

(a)     A "section 401(a)(17) employee" means any Member whose current accrued benefit as of a date on or after the first day of the first Plan Year beginning on or after January 1, 1994, is based on Compensation for a year beginning prior to the first day of the first Plan Year beginning on or after January 1, 1994, that exceeded $150,000.

(b)     Each section 401(a)(17) employee's accrued benefit under this plan will be the greater of the accrued benefit determined for the employee under 1 or 2 below:

  (1)     the Employee's accrued benefit determined with respect to the benefit formula applicable for the Plan Year beginning on or after January 1, 1994, as applied to the Employee's total years of service taken into account under the Plan for the purposes of benefit accruals, or

  (2)     the sum of:

    (a)     the Employee's accrued benefit as of the last day of the last Plan Year beginning before January 1, 1994, frozen in accordance with section 1.401(a)(4)-13 of the regulations, and

    (b)     the Employee's accrued benefit determined under the benefit formula applicable for the Plan Year beginning on or after January 1, 1994, as applied to the Employee's years of service credited to the Employee for Plan Years beginning on or after January 1, 1994, for purposes of benefit accruals.

## ARTICLE VI.
## Retirement Income at Optional Early Retirement Date{ TC }

Section 6.1.    Commencement of Benefits at Normal Retirement Date{ TC }.  If a Member retires at an Optional Early Retirement Date, the Retirement Income payments to the Member will be the Normal Retirement Income determined under Article V, which will commence on his or her Normal Retirement Date unless he or she elects an earlier commencement date as provided in Section 6.2.

Section 6.2.    Commencement of Benefits at Optional Early Retirement Date{ TC }.  A Member who retires at an Optional Early Retirement Date or who terminates employment as a Covered Employee before his or her Optional Early Retirement Date may elect to have payment of retirement income commence on his or her Optional Early Retirement Date, or on the first day of any subsequent month but before his or her Normal Retirement Date, subject to the terms of Article VII regarding Alternate Options.   The Accrued Benefit of the Member will be subject to the reductions in Section 6.2(A) or (B), as applicable:

(A)    If a Member retires on an Optional Early Retirement Date or terminates employment earlier under the Long Term Disability Plan, the Member's Accrued Benefit will be reduced by .4166% for each month that the Member elects to have payment of retirement income commence on any Annuity Starting Date before  the month following the Member's 60th birthday.

(B)    If a Member is a Covered Employee and terminates employment before the first day of the month after his or her 50th birthday,  the percentage of the Member's Accrued Benefit payable on the first day of the month following his or her 50th birthday will be based on his or her total points, as specified in the following table, increased by .4166% per month (5% per year) not to exceed 100%, for each additional month that the Member's Annuity Starting Date occurs later than the first day of the month after his or her 50th birthday:

| Points at Termination Date (Age plus Continuous Service) | Percentage of Age 65 Accrued Benefit Payable at Age 50 | Points at Termination (Age plus Continuous Service) | Percentage of Age 65 Accrued Benefit Payable at Age 50 |
|---|---|---|---|
| 55 | 50% | 49 | 38% |
| 54 | 48% | 48 | 36% |
| 53 | 46% | 47 | 34% |
| 52 | 44% | 46 | 32% |
| 51 | 42% | 45 or fewer | 30% |
| 50 | 40% | | |

A Member's total points credited on the first Annuity Starting Date after his or her 50th birthday will be the sum of the Member's years and months of age on his or her Termination Date and the