Case 1:05-cv-00288-KAJ   Document 24-2   Filed 06/27/2005   Page 1 of 3

Page 1
1993 U.S. Dist. LEXIS 14048, *

LEXSEE 1993 U.S. DIST. LEXIS 14048 (E.D. PA. 1993)

PATRICIA GELZINIS, and ANTHONY GELZINIS, h/w v. JOHN HANCOCK MUTUAL LIFE INSURANCE CO.

CIVIL ACTION NO. 93-0569

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1993 U.S. Dist. LEXIS 14048

October 4, 1993, Decided
October 5, 1993, Filed; October 6, 1993, Entered

LexisNexis(R) Headnotes

COUNSEL:

For PATRICIA GELZINIS, ANTHONY GELZINIS, h/w PLAINTIFFS: MICHAEL PATRICK BOYLE, PHILA, PA.

For JOHN HANCOCK MUTUAL LIFE INSURANCE CO, DEFENDANT: MICHAEL J. GLASHEEN, C. DENNIS SOUTHARD, IV, JENNIFER WALTERS BROWN, CLARK, LADNER, FORTENBAUGH & YOUNG, PHILA, PA.

JUDGES: [*1] HUTTON

OPINIONBY: BY THE COURT; HERBERT J. HUTTON

OPINION: MEMORANDUM AND ORDER

HUTTON, J.

October 4, 1993

Presently before the Court are defendant's Motion for Summary Judgment, plaintiff's response and defendant's reply.

I. BACKGROUND

Due to medical problems, plaintiff, Patricia Gelzinis, ceased working as a marketing representative for John Hancock Mutual Life Insurance Co. ("John Hancock") in May, 1988. In February, 1990, Ms. Gelzinis applied for long term disability benefits which she began receiving in March, 1990. In July of 1990, John Hancock determined that Ms. Gelzinis no longer qualified for disability benefits. In a letter dated July 31, 1992, John Hancock informed Ms. Gelzinis of its decision and advised her of her right to appeal. Instead of pursuing an appeal, Ms. Gelzinis sent a letter to the supervisor of John Hancock's Benefit Payment Services Group, Ms. Kim Ciciera, advising that Ms. Gelzinis' doctor planned to submit a letter concerning her disability claim. In a response letter dated August 24, 1992, Ms. Ciciera informed the plaintiff that the company refused to change its decision. Ms. Ciciera also advised the plaintiff of her right to appeal the determination. [*2]

Following the receipt of Ms. Ciciera's letter, the plaintiff hired an attorney who sent John Hancock a letter protesting the termination of benefits and requesting further review. On December 11, 1992, the plaintiff commenced this action in the Court of Common Pleas of Philadelphia County. In a letter dated December 21, 1992, the manager of John Hancock's Disability Unit, Mr. Kevin T. Ufrer, sent the plaintiff's attorney a letter informing him that the John Hancock would not change its decision.

The defendant subsequently removed this action to federal court. On April 26, 1993, this Court entered an Order dismissing the plaintiff's claims for attorney's fees and punitive damages pursuant to 42 Pa. Con. Stat. § 8371. The Court also granted the plaintiff leave to file an amended complaint requesting attorney's fees and costs under ERISA, 29 U.S.C. § 1132(g), which the plaintiff did. The defendant has since filed this Motion for Summary Judgment. t.

II. DISCUSSION

A. The Standard for Summary Judgment

The purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. [*3] Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038, 50 L. Ed. 2d 748, 97 S. Ct. 732 (1977). When considering a motion for summary judgment, this Court shall grant such motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When reviewing a motion for summary judgment, this Court will resolve all reasonable doubts and inferences in favor of the nonmoving party. Arnold Pontiac--GMC, Inc. v. General Motors Corp., 700 F. Supp. 838, 840 (W.D. Pa. 1988).

The inquiry into whether a "genuine issue" of material fact exists has been defined by the Supreme Court as whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). "As to materiality, the substantive law will identify which facts are material." Id.

The Supreme Court articulated [*4] the allocation of burdens between a moving and nonmoving party in a motion for summary judgment in Celotex Corp. v. Catrett, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The Court held that the movant had the initial burden of showing the court the absence of a genuine issue of material fact, but that this did not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. Id. at 323. The Court also held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions, on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed.R.Civ.P. 56(e)).

The Supreme Court further elaborated on the type of evidence that the nonmoving party is required to adduce in order to withstand a motion for summary judgment:

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her [*5] own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred [a genuine issue of material fact].

Id.

## B. ERISA Claim

The defendant claims that due to the plaintiff's failure to comply with the appeal procedures set forth in the letter dated July 31, 1992, her ERISA claim is barred by the exhaustion of administrative remedies doctrine. The plaintiff on the other hand claims, inter alia, that her failure to comply with the governing administrative procedures should be excused due to futility.

"Prior to bringing an action under ERISA [for a denial of benefits, federal courts] normally require the plan participants to exhaust available administrative remedies." Roessel v. Rivendell of Am., Inc., 977 F.2d 590 (9th Cir. 1992)(unreported decision); see also Amato v. Bernard, 618 F.2d 559 (9th Cir. 1980); Molnar v. Wibbelt, 789 F.2d 244, 250 n.3 (3d Cir. 1986) [*6] ("Courts generally apply the exhaustion doctrine to ERISA suits by requiring parties to exhaust internal administrative remedies before bringing suit."); Wolf v. National Shopmen Pension Fund, 728 F.2d 182, 185 (3d Cir. 1984). The exhaustion of remedies doctrine serves a number of important policy considerations, including "helping to 'reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.'" Curry v. Contract Fabricators Incorporated Profit Sharing Plan, 891 F.2d 842, 846 (11th Cir. 1990)(quoting Amato, 618 F.2d at 567-68). "The decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court and may be disturbed on appeal only when there has been a clear abuse of discretion." Powell v. A.T. & T. Communications, Inc., 938 F.2d 823, 825 (7th Cir. 1991).

The Court finds that the application of the administrative remedies doctrine is [*7] warranted in the instant case. First, the plaintiff ignored the defendant's clear instructions with respect to the appeal of John Hancock's decision to terminate benefits. In the letter dated July 31, 1992, John Hancock informed the plaintiff:

> You have the right to appeal this decision and receive an impartial and fair review through the grievance procedures of **your**

**particular union.** You must furnish documentation as to why the claim denial should be reversed. If you wish such a review, you or your authorized representative may request such by writing to **your union representative** no more than 120 days from the date of this letter.

This paragraph clearly instructed the plaintiff to contact her union if she wished to appeal the company's termination of benefits. In fact, the Company sent the plaintiff a second letter wherein it reiterated this advice.

Moreover, it is clear that the plaintiff understood the import of these instructions. In her letter dated August 4, 1992, the plaintiff stated: "I feel that the decision made by Brian Scarborough is very unjust, especially since I was never advised that there was a problem with my disability claim. This is the [*8] reason why I am not going through the union." (Plaintiff's Letter of August 4, 1992) (emphasis added). Thus, the Court finds the plaintiff's claim of ignorance with respect to the proper procedures for initiating an appeal disingenuous. Finally, the instructions contained in the letters are consistent with the bargaining agreement between John Hancock and the plaintiff's union, which sets forth a detailed procedure for resolving "all grievances between the Marketing Representative and/or the Union and the Company . . . ." Collective Bargaining Contract, art. V; see also Mason v. Continental Group, Inc., 763 F.2d 1219 (11th Cir. 1985)(holding ERISA plaintiff bound to exhaust the grievance procedures set forth in collective bargaining agreement before instituting suit in federal court).

The plaintiff also raises a claim for attorney's fees. Section 29 U.S.C. § 1132(g) states that, in ERISA cases, a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." § 29 U.S.C. § 1132(g) (1993). Under this section, "the losing party may under certain [*9] circumstances be entitled to attorney's fees . . . ." Sharron v. Amalgamated Ins. Agency Serv., Inc., 704 F.2d 562, 569 (11th Cir. 1983); accord Bishop v. Osborn Transp., Inc., 687 F. Supp. 1526, 1528 (N.D. Ala. 1988).

In determining whether to make any award of fees under ERISA, courts have considered five policy factors:

(1) the offending parties' culpability or bad faith;

(2) the ability of the offending parties to satisfy an award of attorney's fees;

(3) the deterrent effect of an award of attorneys' fees against the offending parties;

(4) the benefit conferred on members of the pension plan as a whole; and

(5) the relative merits of the parties' position.

Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983). "Each of these five factors '[is] to be considered by the district court in determining claims for attorney's fees under ERISA.'" Gelzinis v. John Hancock Mutual Life Ins. Co., C.A. No. 93-0569, 1993 U.S. Dist. LEXIS 5483 (E.D. Pa. filed April 26, 1993)(Hutton, J.)(quoting Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1011)(3d Cir. 1992)).

The Court finds [*10] that the award of attorney's fees is not proper in the instant case. First, this case might have been avoided had the plaintiff simply followed the letters' clear instructions for initiating an appeal. Second, the plaintiff acted with the advice of counsel, who inexplicably also ignored the letters' instructions. Third, the record is devoid of any evidence indicating bad faith on the part of the defendant. As a result, the award of attorney's fees will not serve a deterrent effect.

For the foregoing reasons, the defendant's Motion for Summary Judgment is **GRANTED**.

**FINAL JUDGMENT**

AND NOW, this 4th day of October, 1993, upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's response and Defendant's Reply, IT IS HEREBY ORDERED that the Defendant's Motion is **GRANTED**.

JUDGMENT is entered in favor of Defendant and against Plaintiffs.

BY THE COURT:

HERBERT J. HUTTON, J.